## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LAURA EDWARDS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 11-CV-0017-CVE-TLW** |
| | ) | |
| SOUTHCREST, L.L.C., | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court is Defendant's Motion for Summary Judgment and Brief in Support

Thereof (Dkt. ## 54, 55). Defendant SouthCrest, L.L.C. (SouthCrest) requests summary judgment

on plaintiff's claims under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. (FMLA).[1]

Plaintiff responds that SouthCrest interfered with her right to take FMLA leave and retaliated against

her for requesting FMLA leave, and that defendant's motion for summary judgment should be

denied.

## I.

Laura Edwards is a licensed radiology technician and she obtained an associate degree in

radiology in 2006. Before receiving her degree, she worked as a student technician for SouthCrest.

Edwards suffered from stiffness in her back and joints, and she later learned that she had rheumatoid

---

[1] Plaintiff cited the Consolidated Omnibus and Budget Reconciliation Act, 29 U.S.C. § 1601 et seq. (COBRA) in her petition, but her attorney conceded at plaintiff's deposition that she did not have a viable COBRA claim. Dkt. # 55-1, at 2. By agreement between the parties, defendant's attorney refrained from questioning plaintiff about her COBRA claim and the parties agreed to reconvene the deposition if plaintiff chose to file an amended complaint more clearly alleging a COBRA claim. Id. Plaintiff has not filed an amended complaint and she does not mention COBRA in her response to defendant's motion for summary judgment, and the Court deems plaintiff's COBRA claim abandoned.

arthritis. Dkt. # 55-1, at 12. The pain ordinarily subsided by about 9:00 a.m. and she was able to perform her job. Stacy Kirk was Edwards' direct supervisor and Bobbie Reed was a lead technician. Edwards claims that she had a personality conflict with Reed and she believed that Reed did not like her, but does not know any specific reason for this alleged personality conflict. Id. at 15, 22. Edwards got along well with Kirk and she had no problems communicating with Kirk if she felt that she was being treated unfairly by Reed. Id. at 21-22.

In July 2007, Kirk offered Edwards a full-time position as a radiology technician at SouthCreek, and Edwards accepted the position. SouthCreek is a smaller medical facility located one or two blocks from SouthCrest Hospital, but the rules governing employment were the same at both facilities. Dkt. # 55-2, at 3. Kirk remained Edwards' direct supervisor. However, the radiology director for SouthCreek was Carolyn Robinson, and Kirk reported to Robinson. SouthCrest employees were required to "[a]lways clock *out* and back *in* if you leave the facility for lunch or for personal business." Id. at 43. Edwards claims that clocking in and out for lunch was "not a big deal" at the beginning of her employment. Dkt. # 55-1, at 18. Robinson asked Kirk to send an internal memorandum to employees to remind them to clock out if they left the SouthCrest campus for lunch, regardless of the length of the lunch break. Dkt. # 55-3, at 1. Edwards claims that Kirk told her that she did not have to change her practices concerning clocking in and out for lunch breaks, and that Kirk would not require Edwards to clock out if she was picking up lunch for other people. Dkt. # 55-1, at 18, 35. Edwards admits that SouthCrest does not have a written rule containing such an exception, and this alleged policy about picking up lunch for others is based only on Kirk's statement. Id. at 35.

Edwards received several disciplinary notices and warnings due to her failure to comply with the clock out/clock in policy. On July 19, 2007, Edwards received a written warning for clocking out before her shift was over. Dkt. # 55-3, at 3. On October 30, 2008, Edwards received another written warning for three separate violations of the clock out/clock in policy. Id. at 4. Edwards did not attend work on November 28, 2008 and did not call in to report her absence and, on December 5, 2008, SouthCrest issued a written warning for a violation of its attendance policy. Id. at 6. The warning states that "any future violations involving shift coverage or clocking infractions will result in immediate termination from your position at SouthCrest Hospital." Id. During a December 5, 2008 meeting, Edwards told Robinson that she suffered from rheumatoid arthritis, but she did not make any statements to Robinson suggesting that the condition prevented her from working or that she needed FMLA leave. Dkt. # 55-1, at 32. Edwards also attempted to argue that her October 2008 warning was unfair, but Robinson was not interested in hearing about that warning and clearly told Edwards that "this just better not happen again." Id. On December 11, 2008, Edwards left SouthCreek to pick up lunch for a co-worker, Ronnie Humphrey, but she did not clock out and she did not request permission to leave during her shift. Id. at 33. Edwards claims that she was not required to clock out to pick up lunch for someone else, but she admits that this exception to the clocking rules was not a formal or written rule. Id. at 35.

On December 12, 2008, Robinson drafted a disciplinary action notice describing the clocking infraction and stating that Edwards had been warned that any "future clocking in/out violations would result in immediate termination" of her employment. Dkt. # 55-3, at 7. However, the notice shows that the paperwork to request Edwards' termination was not sent to human resources until December 15, 2008. Id. Edwards reported to work on December 15, 2008, and worked for about

two and a half hours. Edwards claims that the she called Reed to ask if she could visit the employee

health nurse, and Reed said "sure." Dkt. # 55-1, at 36. Edwards drove to SouthCrest Hospital to

see the employee health nurse, and she made an appointment to see her rheumatologist on her way

to the hospital. Id. The employee health nurse, Kathi Harper, noted that Edwards came to her office

at 10:25 a.m. Dkt. # 55-3, at 17. Edwards asked Harper if taking FMLA leave would "protect her

job." Id. Harper gave Edwards the necessary paperwork to request FMLA leave. Dkt. # 55-1, at

36. Edwards claims that she went to Reed after visiting Harper. Edwards allegedly showed Reed

a note signed by Harper authorizing her to leave for the day and she showed Reed the FMLA

paperwork. Id. She claims that she told Reed that she would ask her rheumatologist to complete

the FMLA paperwork that afternoon. Id. Edwards also testified in her deposition that she notified

Kirk by phone that she would be leaving for the day and that she had been given FMLA paperwork

to take to her doctor. Id. at 37. There is no evidence suggesting that Kirk or Reed informed plaintiff

on December 15, 2008 that her employment was about to be terminated. Edwards visited her

rheumatologist, and he recommended that Edwards be granted FMLA leave until December 22,

2008. Dkt. # 55-3, at 18. At 12:13 p.m. on December 15, 2008, Kirk sent an e-mail to Robinson

and Sheila Nelson, SouthCrest's director of human resources, requesting permission to terminate

Edwards' employment. Id. at 15. Approval for Edwards' termination was granted on December

16, 2008, and Edwards' employment was formally terminated on December 16, 2008. Id. at 7.

Edwards received a voice message from Robinson[2] on December 17, 2008 notifying her of the termination. Dkt. # 55-1, at 35. Edwards called the human resources department and claimed that she was on FMLA leave. Edwards met with Nelson on December 22, 2008 to discuss her termination. Edwards' employment was not reinstated as a result of the meeting. Id. at 41.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the

---

[2]     Defendant asks the Court to find that plaintiff's counsel has a conflict of interest that prevents her from continuing to represent plaintiff. Dkt. # 64, at 6. Plaintiff's counsel states that she called Robinson, and Robinson stated that did not remember plaintiff. Dkt. # 62, at 26. Defendant claims that plaintiff's counsel has made herself a fact witness by making this statement. The Court does not find that this alleged statement by Robinson has any bearing on defendant's motion for summary judgment and, in any event, Robinson could testify to this fact herself if this matter goes to trial. Plaintiff's counsel is not a necessary witness and there is no reason to terminate her representation of plaintiff.

record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Id.</u> at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. <u>Garratt v. Walker</u>, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Defendant claims that it had no notice before initiating plaintiff' termination that she would be applying for FMLA leave, and plaintiff cannot show that defendant interfered with her right to take FMLA leave. Dkt. # 55, at 20-22. Defendant also argues that plaintiff cannot establish a <u>prima facie</u> case of FMLA retaliation or show that defendant's legitimate, non-discriminatory reason for terminating her employment is pretextual. Plaintiff responds that she told Reed and Kirk before 12:13 p.m. on December 15, 2008 that she would be seeking FMLA leave, and that defendant was on notice of plaintiff's need for FMLA leave before approval was sought to terminate her employment. Dkt. # 63, at 19-21. Plaintiff also argues that other circumstantial evidence supports an inference that defendant interfered with her right to take FMLA leave and/or terminated her employment in retaliation for requesting FMLA leave, and defendant's motion for summary judgment should be denied.

**A.**

Under the FMLA, an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided." 29 U.S.C. § 2615(a)(1). To establish an FMLA interference claim, a plaintiff must show "(1) that [she] was entitled to FMLA leave, (2) that some adverse action by the employer interfered with [her] right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of [her] FMLA rights." Jones v. Denver Pub. Sch., 427 F. 3d 1315, 1319 (10th Cir. 2005). An employee may allege an FMLA interference claim based on interference with the right to take the full amount of FMLA leave, the denial of reinstatement after taking FMLA leave, or the denial of initial permission to take FMLA leave. Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282, 1287 (10th Cir. 2007). Under an interference theory, an employer's intent in denying or interfering with an employee's FMLA rights is not relevant. See Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 877 (10th Cir. 2004). Nonetheless, the FMLA is not a strict liability statute, and nothing in the FMLA entitles an employee to greater protection from termination not related to her FMLA leave. Metzler v. Federal Home Loan Bank of Topeka, 464 F. 3d 1164, 1180 (10th Cir. 2006).

The parties dispute whether defendant had pre-termination notice that plaintiff was requesting FMLA leave. Defendant argues that plaintiff's vague statements to Reed that she was "not feeling well" and that she wanted to visit the nurse are not sufficient to constitute notice of a serious medical condition. Dkt. # 55, at 21. Plaintiff claims that she gave defendant notice on December 15, 2008 that she had a serious medical condition, and Harper provided her with FMLA paperwork on that date. Dkt. # 63, at 19-20. She also claims that she spoke to Reed and Kirk after meeting with Harper, and she told Reed and Kirk that she would be applying for FMLA leave. Dkt.

# 55-1, at 36-37. The evidence is unclear as to whether the December 12, 2008 disciplinary action notice was the inception of termination proceedings. The December 12, 2008 disciplinary action notice states that plaintiff was previously warned that future violations of the clocking policy could result in her termination. However, Kirk did not request authority to terminate plaintiff until 12:13 p.m. on December 15, 2008. Dkt. # 55-3, at 15. Plaintiff claims that she spoke to Reed and Kirk before 12:13 p.m. and advised them that she would be requesting FMLA leave. Dkt. # 55-1, at 36-37. Plaintiff also went to work on December 15, 2008, and no one told her that her employment was about to be terminated. Viewing the evidence in a light most favorable to plaintiff, the Court finds that there is a genuine dispute of material fact as to whether defendant had pre-termination notice of plaintiff's request for FMLA leave. Plaintiff claims that she did give defendant pre-termination notice, and it is unclear if defendant was proceeding with the termination process before plaintiff allegedly gave notice to Kirk and Reed that she would be seeking FMLA leave. A final determination of this factual issue will depend on the credibility of plaintiff and other witnesses, and the Court cannot resolve this disputed issue of fact based on the summary judgment record.

This genuine dispute of material fact precludes summary judgment on plaintiff's FMLA interference claim. The first and second elements of plaintiff's FMLA interference claim are not significantly disputed. Rheumatoid arthritis could certainly constitute a "serious health condition" supporting an employee's request for FMLA leave if, as plaintiff states, it was causing such significant pain that plaintiff could not perform the functions of her job. Id. at 36. Harper sent plaintiff home from work and provided her FMLA paperwork, and plaintiff's physician recommended that plaintiff be granted FMLA leave until December 22, 2008. This is sufficient at the summary judgment stage to meet plaintiff's burden to show that she was entitled to FMLA leave.

Defendant claims that it did not interfere with plaintiff's right to take FMLA leave, but terminating plaintiff's employment is certainly an adverse action interfering with plaintiff's right to take FMLA leave. Defendant argues that plaintiff has not presented evidence to show a causal connection between her request for FMLA leave and her termination, and it disputes plaintiff's assertion that there is a genuine dispute as to the third element of her FMLA interference claim. Defendant bears the burden to prove that it would have terminated plaintiff's employment regardless of her request for FMLA leave. Twigg v. Hawker Beechcraft Corp., 659 F.3d 987, 1006-07 (10th Cir. 2011). An employee with continuous problems of tardiness and absenteeism is not protected from termination merely by requesting FMLA leave. Bones, 366 F.3d at 878. It is a close call on the third element of plaintiff's FMLA interference claim. It is likely that plaintiff would have been terminated regardless of her request for FMLA leave, because the December 12, 2008 disciplinary action notice states that plaintiff was "warned that any future clocking in/out violations would result in immediate termination . . . ." Dkt. # 55-3, at 7. However, the Court cannot overlook the extremely close temporal proximity between plaintiff's alleged notice of FMLA leave and her termination. It is also relevant that plaintiff attended work on December 15, 2008, three days after defendant claims it initiated the termination process, and no one informed plaintiff that her employment was about to be terminated. Due to genuine disputes as to whether defendant initiated the process to terminate plaintiff's employment before December 15, 2008 and the alleged timing of plaintiff's FMLA notice, the Court finds that defendant is not entitled to summary judgment on plaintiff's FMLA interference claim.

**B.**

Plaintiff also alleges that defendant terminated her employment in retaliation for requesting FMLA leave. The FMLA prohibits an employer from retaliating against an employee for opposing a practice made unlawful by the FMLA. 29 U.S.C. § 2615(a)(2). FMLA retaliation claims are subject to the burden-shifting framework of McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). Campbell, 478 F.3d at 1287. To make out a prima facie FMLA retaliation claim, a plaintiff must show that "(1) she engaged in a protected activity; (2) [her employer] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." Metzler, 464 F.3d at 1171. The Tenth Circuit characterizes "the showing required to satisfy the third prong under a retaliation theory to be a showing of bad intent or 'retaliatory motive' on the part of the employer." Campbell, 478 F.3d at 1287 (quoting Metzler, 464 F.3d at 1171). If plaintiff can establish a prima facie case of FMLA retaliation, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action. Id. at 1290. The burden shifts back to the plaintiff to "show that there is a genuine dispute of material fact as to whether [the employer's] reasons for terminating her are pretextual." Id. (quoting Metzler, 464 F.3d at 1172). To establish a genuine dispute of material fact as to pretext, a plaintiff cannot rely solely on temporal proximity of her FMLA leave and the adverse employment action, and the plaintiff must offer some other evidence of retaliatory motive. Metzler, 464 F.3d at 1172.

Plaintiff can establish a <u>prima facie</u> case of FMLA retaliation. There is a genuine dispute concerning the first element of plaintiff's <u>prima facie</u> case of FMLA retaliation, because plaintiff may have engaged in protected activity. Plaintiff claims that she told Reed and Kirk that she would be applying for FMLA leave before Kirk sent an e-mail to the human resources department requesting authority to terminate plaintiff's employment. Dkt. # 55-1, at 36-37. Thus, it is possible that plaintiff engaged in protected activity while she was still employed by defendant. Defendant terminated plaintiff's employment and this is an adverse employment action. The Court has already determined that defendant has not offered undisputed evidence eliminating the possibility of a causal connection between plaintiff's request for FMLA leave and her termination and, for the reasons stated above, the Court finds that plaintiff can establish the third element of her <u>prima facie</u> case of FMLA retaliation. <u>See</u> III.A <u>supra</u>. In particular, plaintiff testified in her deposition that she informed Kirk that she needed FMLA leave and Kirk was the person who requested permission to terminate plaintiff's employment. <u>See</u> <u>Williams v. Rice</u>, 983 F.2d 177, 181 (10th Cir. 1993) (evidence that the person taking the adverse employment action knew of the employee's protected activity is an essential part of a retaliation claim).

The burden shifts to defendant to come forward with a legitimate, non-discriminatory reason for terminating plaintiff's employment. "The defendant's burden is merely to articulate through some proof a facially nondiscriminatory reason for the termination; the defendant does not at this stage of the proceeding need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need prove that the reasoning was applied in a nondiscriminatory fashion." <u>EEOC v. Flasher Co., Inc.</u>, 986 F.2d 1312, 1316 (10th Cir. 1992). The Tenth Circuit has described the defendant's burden at this stage of the proceedings as "exceedingly

light." Zamora v. Elite Logistics, Inc., 478 F.3d 1160, 1165 (10th Cir. 2007). Defendant states that it terminated plaintiff's employment due to her repeated violations of defendant's clock in/clock out policy and other attendance problems. This is a legitimate, non-discriminatory reason for terminating plaintiff's employment, and the burden shifts to plaintiff to show that defendant's stated reason is pretextual.

Plaintiff argues that the temporal proximity of her request for FMLA leave and her termination and other evidence are sufficient to suggest that defendant acted with a retaliatory motive when terminating her employment. The Court notes that this is a close case and some of the arguments advanced by plaintiff do not tend to show the defendant's stated reason is pretextual. Plaintiff argues that defendant had alternate remedies short of termination to cure plaintiff's clocking infractions, but the Court will not second-guess defendant's application of its own disciplinary policies. See Riggs v. AirTran Airways, Inc., 497 F.3d 1108, 1119 (10th Cir. 2007). The Court will also not make an adverse inference from the absence of affidavits or deposition testimony of Kirk or Robinson. However, viewing the evidence in a light most favorable to plaintiff, there is some evidence that could suggest that defendant's legitimate, non-discriminatory reason is pretextual. The Court has discussed the close temporal proximity between plaintiff's alleged notice of FMLA leave and her termination. It is also undisputed that plaintiff reported for work on December 15, 2008, and no one advised plaintiff that her employment was about to be terminated. Kirk did not request authorization to terminate plaintiff's employment until plaintiff left work for a medical reason on December 15, 2008, and Kirk's e-mail was sent after plaintiff allegedly gave Kirk notice that she would be requesting FMLA leave. Defendant states that it decided to terminate plaintiff's employment on December 12, 2008, but this is not the only reasonable conclusion that can be drawn

from the evidence and the Court must consider the evidence in the light most favorable to plaintiff. The Court finds that there is a genuine dispute of material fact as to whether plaintiff's employment would have been terminated on December 15, 2008 absent her alleged notice to defendant of her intent to take FMLA leave, and defendant is not entitled to summary judgment on plaintiff's FMLA retaliation claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment and Brief in Support Thereof (Dkt. ## 54, 55) is **denied**.

**DATED** this 9th day of March, 2012.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT